**STATE of Missouri, Respondent,**

v.

**Darrell CHAMBERS, Appellant.**

**No. WD 55964.**

Missouri Court of Appeals,
Western District.

June 22, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 1999.

Application for Transfer Denied
Sept. 21, 1999.

John M. Schilmoeller, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Catherine Chatman, Asst. Atty. Gen., Jefferson City, for respondent.

Before Judge LAURA DENVIR STITH, Presiding, Judge HAROLD L. LOWENSTEIN, and Judge ALBERT A. RIEDERER.

LAURA DENVIR STITH, Judge.

Defendant Darrell Chambers appeals his convictions of forcible rape, in violation of Section 566.030, RSMo Cum.Supp.1993, and assault in the first degree, in violation of Section 565.050, RSMo 1986, for which he was sentenced to consecutive terms of thirty and fifteen years imprisonment, respectively. On appeal, Defendant asserts: (1) the trial court committed plain error when it submitted an instruction which fatally varied from the MAI–CR; and (2) the trial court erred in overruling his motion for judgment of acquittal on his conviction of assault in the first degree because there was insufficient evidence from which the jury could conclude beyond a reasonable doubt that he had the necessary intent to commit the crime charged. Finding no error, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The evidence, taken in the light most favorable to the verdict, is as follows: on March 7, 1994, at around 11:00 p.m., Defendant and his friend, Tracy Jackson, met Mary Goertz at the Amtrak Station in Kansas City, Missouri. Ms. Goertz was a mental patient at the Topeka State Hospital. She had escaped from the hospital in late February 1994 and had been living on the streets in Kansas City since that time. Mr. Jackson took Ms. Goertz to a vacant building in the downtown Kansas City area which had once housed the Monroe Hotel. Approximately ten minutes later, Defendant met them there. When Defendant arrived, he saw Mr. Jackson dragging and beating Ms. Goertz while attempting to pull her up the stairs in the building. Ms. Goertz was screaming, hollering and struggling to get free from Mr. Jackson, who was kicking her and stomping her in the face.

Defendant admitted he joined Mr. Jackson and also began hitting Ms. Goertz as he attempted to get her into one of the old hotel rooms in the vacant building. Once they entered one of the rooms, the men continued to beat Ms. Goertz. Mr. Jackson forced Ms. Goertz onto a mattress lying on the floor and forced her to have sex with him. Defendant also attempted to force Ms. Goertz to have sex with him while Mr. Jackson held Ms. Goertz down and punched her in the face. Ms. Goertz continued to struggle, and attempted to get away several times, but the two men made her stay in the room through the night, approximately nine hours. In the morning, Defendant and Mr. Jackson left the room and went their separate ways.

At approximately 12:30 p.m. that afternoon, March 8, 1994, Richard Tyler, a cab driver in Kansas City, found Ms. Goertz sitting outside the bus station in downtown Kansas City. Mr. Tyler saw that Ms. Goertz was crying and could tell that she had been badly beaten. Mr. Tyler took her to the police station, where Ms. Goertz told the police what had happened. Ms. Goertz went with the police to the vacant hotel, where she was able to show them evidence of the crime. Ms. Goertz was then taken to St. Luke's Hospital for treatment.

At the hospital, Ms. Goertz was examined by Robert Bonness, M.D. At trial, Dr. Bonness testified that his examination produced medical findings consistent with a victim who has been raped approximately ten hours before the examination. The doctor observed fresh bruises and lacerations, abrasions over her body and face, bruises on her chest, and pain with breath-

ing. The victim's pelvic examination revealed external and internal tears typical of sexual assault victims. The doctor further noted that the victim had several unique injuries, including injuries in her thigh and genital area sustained with an unknown blunt object. The doctor opined that the victim's injuries were in the worst five or ten percent in severity of the hundreds of injuries of this type he had seen over his twelve years working in the emergency room.

On April 28, 1994, the police interviewed Defendant about the incident with Ms. Goertz. After initially denying his involvement, Defendant admitted his participation in the crime and made a statement to the police. Defendant was charged with forcible rape, kidnapping, and assault in the first degree.

Defendant was tried before a jury on March 2, 1998. The victim, Ms. Goertz, committed suicide about one month after the rapes, and was unable to testify against Defendant. Following testimony as to the matters described above, the judge read through the list of instructions to be given to the jury, and asked defense counsel whether he had any specific objections to the instructions. At that time, defense counsel explicitly said "No, sir; general objection only," to both Instructions Nos. 6 and 8. The jury found Defendant guilty of forcible rape and first-degree assault, but could not reach a verdict on the kidnapping charge. A mistrial on that charge resulted. After hearing testimony from the victim's family members, the court sentenced Defendant to a term of thirty years imprisonment on the forcible rape charge, and to a consecutive term of fifteen years imprisonment on the first-degree assault charge. Defendant appeals.

## II. STANDARD OF REVIEW

We defer to the trier of fact when reviewing the sufficiency of the evidence sup-

porting a criminal conviction. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). The evidence must be sufficient for a reasonable juror to find the defendant guilty beyond a reasonable doubt. *Id., citing, State v. Dulany*, 781 S.W.2d 52 (Mo. banc 1989). We view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the verdict and disregard all contrary evidence. *Id.*

## III. THE ALLEGED INSTRUCTIONAL ERROR

■ Defendant asserts the trial court erred in submitting Instructions Nos. 6 and 8, which were the verdict directors for the offenses of forcible rape and assault in the first degree, respectively. He argues that the instructions fatally varied from the MAI–CR pattern instructions because both instructions omitted an essential phrase from the pattern criminal instruction and thus allowed the jury to convict him without making a specific finding as to his guilt of the offenses charged. He admits that he failed to offer specific objections to the instructions before submission, as required by Rule 28.03, which states:

Counsel shall make *specific objections* to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

Rule 28.03 (emphasis added). Where, as here, counsel fails to object to an instruction at trial, the issue is not preserved, and we review, if at all, only for plain error under Rule 30.20. *State v. McCoy*, 971 S.W.2d 861 (Mo.App.1998); *State v. Martindale*, 945 S.W.2d 669, 673–74 (Mo.App. 1997).[1]

---

1. We reject the State's argument that we are precluded from exercising our discretion to

grant plain error review simply because counsel said he had no specific objection to the

■ We do not find plain error here, however. "Instructional error rises to the level of plain error only if the instruction is so misdirected or so failed to adequately instruct the jury that it is apparent to the appellate court that the error affected the jury's verdict and caused manifest injustice or a miscarriage of justice." *State v. Brown,* 913 S.W.2d 919, 921 (Mo.App. 1996). Appellant bears the burden of establishing manifest injustice. *Id.*

■ As submitted to the jury, Instruction No. 6 read in relevant part:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that between and including March 7, 1994 and March 8, 1994, in the County of Jackson, State of Missouri, defendant or Tracy Jackson had sexual intercourse with Mary Goertz, and

Second, that defendant or Tracy Jackson did so without the consent of Mary Goertz by the use of forcible compulsion,

then you are instructed that the offense of Forcible Rape has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the commission of that Forcible Rape, the defendant acted together with or aided Tracy Jackson in committing that offense, [omission from MAI–CR was to go here]

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these proposition, you must find the defendant not guilty of that offense. . . .

Instruction No. 8 stated in relevant part:

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that between and including March 7 and March 8, 1994, in the County of Jackson, State of Missouri, the defendant or Tracy Jackson attempted to cause serious physical injury to March [sic] Goetz by beating her and ramming an unknown object into her genital area,

then you are instructed that the offense of Assault in the First Degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Second, that with the purpose of promoting or furthering the commission of that Assault in the First Degree, the defendant acted together with or aided Tracy Jackson in committing that offense, [omission from MAI–CR was to go here]

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense. . . .

Defendant argues that Instruction Nos. 6 and 8 were defective because the phrase, *"then you will find the defendant guilty under Count I of the class A felony of forcible rape,"* was omitted from the Instruction No. 6, and the phrase *"then you will find defendant guilty under Count II of assault in the first degree,"* was omitted from Instruction No. 8. Defendant asserts these omissions increased the likelihood that he would be found guilty of offenses committed by Mr. Jackson, without finding that he acted together with or aided Mr. Jackson in committing the offenses, because the jury was left only to conclude that the certain charged offenses had occurred without making a determination as to Defendant's guilt.

Of course, if the instructions as submitted allowed Defendant to be held guilty for offenses he did not commit either personally or by aiding Mr. Jackson, they would

instruction, and generally objected to all instructions. *See State v. Shipley,* 920 S.W.2d 120 (Mo.App.1996) (where defense counsel made general objection to instructions, court would conduct plain error review if warranted).

be improper. That was not the effect of the omission of the phrase in question, however. Here, although both Instruction Nos. 6 and 8 varied from the pattern instructions in that each instruction lacked the concluding phrase that Defendant would be found guilty if all of the elements were found, we cannot conclude that they jury was so substantially misled by the instructions so as to have reached a verdict unjustly. First, the theory throughout the case was that Defendant worked with Mr. Jackson in committing the crimes, and Instruction No. 5 submitted to the jury the requirements of accomplice liability. Second, even considering the omission, the instructions clearly established all the elements of the offenses necessary in order to return guilty verdicts. The variance was not in regard to submission of any of the elements of the offenses or of any affirmative defense, but in directing the jury that it could find him guilty of the offenses charged if it found those elements. Read as a whole, this fact was implicit in the remainder of the language used in the instructions, and the jury did in fact find him guilty of the offenses. Therefore, under these facts, the deviations from the pattern instructions did not mislead the jury and so did not constitute plain error.

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant also asserts that the State failed to prove beyond a reasonable doubt that he committed first-degree assault because, he argues, it failed to show that he had "a specific intent" to cause serious physical injury to the victim, or that he acted together with or aided Mr. Jackson with the "specific purpose" of causing serious physical injury to the victim. Defendant argues the State's evidence showed that his involvement was only minimal and that any injurious acts by him did not reach the level of conduct specifically intended to create a serious physical injury.

■ We disagree that the evidence was insufficient to show that Defendant had the requisite intent. A person commits the crime of first-degree assault if the person attempts to kill or "knowingly causes or attempts to cause serious physical injury to another person." § 565.050.1. Although first-degree assault requires proof of a very specific intent on the part of the actor to cause serious physical injury, the intent element is generally not susceptible of proof by direct evidence. *State v. Burton*, 863 S.W.2d 16 (Mo.App. 1993). Instead, the necessary intent may be based upon circumstantial evidence or inferred from surrounding facts, *State v. Johnson*, 948 S.W.2d 161 (Mo.App.1997), such as evidence of defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct. *Id.; State v. Robinson*, 710 S.W.2d 14 (Mo. App.1986).

■ Here, the evidence showed that Defendant and Mr. Jackson acted together to assault the victim. In his statement to the police, Defendant admitted that he kicked and hit Ms. Goertz, and that Mr. Jackson held her down and beat her while he attempted to rape her. The evidence also showed that Ms. Goertz had substantial injuries, including abrasions, scrapes, and substantial tears in her inner thighs from forceful beating with an unknown object. The physician testified that Ms. Goertz told him she had been assaulted by two assailants, and the physician further stated that she had some of the worst assault injuries he had ever seen during his twelve years working in the emergency room. Reasonable jurors could have concluded from this evidence that Defendant himself attempted to kill or cause serious physical injury to the victim by participating in her assault.

■ Furthermore, Defendant could be found guilty, at the very least, as an accomplice to Mr. Jackson's assault on the victim. A person is criminally responsible for the conduct of another, when, either before or during the commission of an offense, with the purpose of promoting the

commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing, or attempting to commit the offense. *State v. Burch,* 939 S.W.2d 525, 529 (Mo.App.1997). To make a submissible case of aiding and abetting, there must be some evidence that defendant associated himself with the venture or participated in the crime in some manner. *State v. Washington,* 901 S.W.2d 276 (Mo. App.1995). The evidence, however, need not show that the defendant personally committed every element of the crime. *Burch,* 939 S.W.2d at 529. Thus, even though assault is a specific intent crime, to be found guilty as an accomplice to assault, the evidence need only show proof of some participation in the underlying crime. Intent may be inferred from the circumstances. *Washington,* 901 S.W.2d at 280.

■ Here, there was ample evidence from which a reasonable jury could conclude the Defendant aided and abetted Mr. Jackson in the commission of assault. Defendant was present throughout the nine hours during which Mr. Jackson beat and raped Ms. Goertz, he fled from the scene with Mr. Jackson after the nine-hour assault, and his conduct during the crime was consistent with the status of an aider and abettor, as he admitted to hitting Ms. Goertz himself, to helping Mr. Jackson get Ms. Goertz up the stairs in the vacant hotel so that the assault could continue, to holding her down while she was raped, and to preventing Ms. Goertz from leaving the hotel room throughout the nine hours of the assault.

For all of these reasons, the judgment is affirmed.

Judge HAROLD L. LOWENSTEIN and Judge ALBERT A. RIEDERER concur.