STATE of Missouri, Plaintiff–
Respondent,

v.

**Brian Wilson HICKS, Defendant–
Appellant.**

**No. 27140.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 12, 2006.

Thomas D. Carver, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Robert J. (Jeff) Bartholomew, Assistant Attorney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

Following a bench trial, Brian Wilson Hicks ("Defendant") was convicted of the class A felony of robbery in the first degree, a violation of Section 569.020.[1] The trial court sentenced Defendant to eighteen years imprisonment in the department of corrections. He now appeals, challenging the sufficiency of the evidence to support his conviction. We affirm.

Viewed in the light most favorable to the verdict, the evidence adduced at trial revealed the following. On the night of July 3, 2004, Curtis M. Rowden ("Victim") attended a house party in Springfield, Missouri, where he met and talked with Shane Chesher ("Chesher") and Defendant. Victim remained at the party until 2:45 a.m. the next morning, when he left to go home. Shortly after Victim got into his car, Chesher let himself in the vehicle and asked Victim if he would drive Chesher and Defendant to Chesher's car. Victim told them "sure" and Defendant proceeded to get into the back seat. As Victim drove, both Chesher and Defendant provided directions. Victim was lead to a cul-de-sac where Defendant and Chesher told him to pull into a driveway. Victim noticed that a van was parked in the driveway and he asked Chesher where his car was. Chesher told him it was in the garage.

As Victim was unlocking his door, Chesher pointed a gun at his face and said, "Give me all you got." Defendant had his fist in the air and told Victim, "Just do what he says." Victim gave Chesher the following items: a watch, a class ring, his wallet with $20 in it, his checkbook, a ring with black and white stones, and his car keys. Defendant then told Victim to get out of the car, get on the ground and count to 200. As he was lying on the ground, Defendant began digging through his pockets, taking Victim's cell phone. He then pulled out Victim's asthma inhaler, laid it on his back, and told him he could keep it. Defendant and Chesher told Victim to stay on the ground and to keep counting. Defendant and Chesher left in a green and tan Isuzu Trooper owned by Defendant's sister,[2] which Victim had seen at the party earlier that morning. After they left, Victim went to a neighboring house and called the police.

Later that same day, a woman found a checkbook belonging to Victim in the driveway of Defendant's parents' house. The woman knocked on the door, asked Defendant about the checkbook and left it with him. Later that day, the police came to the home to investigate the checkbook that had been stolen in the robbery. They spoke to Defendant's Mother, Patricia Hicks ("Patricia"), who was unaware that a checkbook had been found earlier in her driveway. In the presence of the police, Patricia telephoned Defendant, who admit-

---

1. All references to statutes are to RSMo (2000) and all references to rules are to Missouri Rules of Criminal Procedure (2005), unless otherwise indicated.

2. Defendant's sister had let Defendant drive her vehicle the night of July 3, 2004.

ted to her that a woman had given him a checkbook earlier that day.

Defendant was charged with the class A felony of robbery in the first degree and after waiving his right to a jury trial he was tried before the court. The trial court found Defendant guilty and sentenced him to eighteen years in the department of corrections. This appeal followed.

■ Defendant was tried and convicted under a theory of accomplice liability. Both points raised by Defendant challenge the sufficiency of the evidence supporting his conviction. Appellate review of the sufficiency of the evidence in a court-tried criminal case is the same as the standard employed in a jury-tried case. Rule 27.01(b); *State v. Niederstadt,* 66 S.W.3d 12, 13 (Mo. banc 2002). "The appellate court's role is limited to a determination of whether the state presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty." *Id.* at 13–14. "[A]ll evidence and inferences reasonably drawn from the evidence are viewed in the light most favorable to the verdict, and contrary evidence and inferences are disregarded." *State v. May,* 71 S.W.3d 177, 183 (Mo.App. W.D.2002). The credibility of witnesses and inconsistencies in testimony are for the trier of fact to consider. *Id.*

■ "The law of accessory liability emanates from statute, as construed by the courts." *State v. Barnum,* 14 S.W.3d 587, 590 (Mo. banc 2000). Section 562.041.1(2) provides that "[a] person is criminally responsible for the conduct of another when ... [e]ither before or during the commission of an offense, with the purpose of promoting the commission of an offense he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." Missouri no longer recognizes a distinction between principals and accessories. *State*

*v. Wurtzberger,* 40 S.W.3d 893, 895 (Mo. banc 2001). Therefore, all persons who act in concert to commit a crime are equally guilty. *Id.*

■ Defendant was charged with first-degree robbery under Section 569.020.1, which provides:

A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,

(1) Causes serious physical injury to any person; or

(2) Is armed with a deadly weapon; or

(3) Uses or threatens the immediate use of a dangerous instrument against any person; or

(4) Displays or threatens the use of what appears to be a deadly weapon or instrument.

Under accomplice liability, the evidence need not show that Defendant personally committed every element of a crime. *State v. Shockley,* 98 S.W.3d 885, 890 (Mo. App. S.D.2003). "[A]ny evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction." *Id.* Affirmative participation may be proven by circumstantial evidence. *Id.*

■ Defendant first argues that his conviction cannot stand because the State presented no evidence as to the intent of the principal actor, Chesher. We disagree. Again, in Missouri, there is no distinction between principals and accessories. *Wurtzberger,* 40 S.W.3d at 895. "The central tenet of accomplice liability is the notion that all who act together with a common intent and purpose in committing a crime are equally guilty." *State v. Biggs,* 170 S.W.3d 498, 504 (Mo.App. W.D.2005)(internal citations and quota-

tions omitted). "Intent may be established by circumstantial evidence or may be inferred from surrounding facts." *State v. Durant*, 156 S.W.3d 524, 527 (Mo.App. W.D.2005). In addition, one's mental state may be reasonably inferred from the act itself. *Id.*

The testimony at trial revealed that after Chesher pointed a gun at Victim's face and said, "Give me all you got," Defendant had his fist in the air and said, "Just do what he says." After Victim had given his belongings to Chesher, Defendant told Victim to get on the ground and count to 200. Victim complied, and as he was lying on the ground, Defendant went through his pockets and took his cell phone. Victim saw Defendant and Chesher get into a green and tan Isuzu Trooper similar in kind to one owned by Defendant's sister. Victim's checkbook was later found in the driveway of Defendant's parents' home.

There was substantial evidence from which the trial court could reasonably draw the inference that Chesher and Defendant acted with a common intent and purpose in committing first degree robbery. While Defendant did not personally commit every element of the crime, the evidence shows his affirmative participation in aiding Chesher to commit the crime. *Shockley*, 98 S.W.3d at 890. Such evidence is sufficient to support a conviction. *Id.* Defendant's first point is denied.

■ In his second point, Defendant maintains that the State failed to prove that he was guilty of first degree robbery in that there was no evidence that he "knowingly intended or encouraged" Chesher to be armed with a deadly weapon in the commission of the robbery. We disagree.

■ Defendant is correct that in order to establish accomplice liability the State is required to prove that Defendant:

1) purposely promoted the offense, and 2) had the culpable mental state for the charged offense. *England v. State*, 85 S.W.3d 103, 110 (Mo.App. W.D.2002); *see also* § 562.036. However, "[c]riminal responsibility for the acts of another does not require a common intent other than the promotion of the commission of an offense." *State v. Forister*, 823 S.W.2d 504, 507 (Mo.App. E.D.1992). In order to be convicted as an accomplice, a defendant need not possess the intent to commit the underlying felony. *Id.* A defendant who embarks upon a course of criminal conduct with others is responsible for those crimes which he could reasonably anticipate would be part of that conduct. *Id.* at 508. "Proof of any form of participation by [D]efendant in the crime is sufficient to support a conviction." *Id.*

A nearly identical argument as that posited by Defendant was rejected by the court in *Forister*. In that case, the defendant appealed a conviction for attempted robbery, arguing that the trial court erred in denying his motion for judgment of acquittal, because while "he believed that a burglary would take place ... he did not know that [his accomplice] was armed and capable of robbery." *Id.* at 507. In rejecting this argument, the court noted that the defendant planned the burglary; drove his accomplices to the site of the burglary; and when his accomplice returned to the car, he drove away. *Id.* at 508. The court found that "this proof was sufficient to make defendant responsible for the attempted robbery[.]" *Id.*

Here, the State was not required to prove that Defendant intended for Chesher to display a deadly weapon. The State only needed to show that Defendant and Chesher acted together with the purpose to commit a criminal offense. The law of accomplice liability imputes the criminal agency of Chesher to Defendant. *State v.*

*Neel,* 81 S.W.3d 86, 91 (Mo.App. W.D. 2002). A defendant who embarks upon a course of criminal conduct with others is responsible for those crimes which he could reasonably anticipate would be part of that conduct. *Forister,* 823 S.W.2d at 508. In this case, it would have been reasonable for Defendant to anticipate that Chesher would display a deadly weapon considering the particular course of their criminal conduct. Defendant's second point is denied.

The State presented sufficient evidence from which the trial court could have reasonably found Defendant guilty of first degree robbery, under a theory of accomplice liability. The judgment and sentence of the trial court is affirmed.

BATES, C.J., and BARNEY, J., concur.